STATE OF NEBRASKA, EX REL. S. W. CHRISTY, V. HERMAN E. STEIN, COUNTY CLERK, AND L. L. JOHNSON, INTERVENOR.

[FILED DECEMBER 20, 1892.]

1. **Elections:** RETURN OF POLL BOOK: CERTIFICATION. Under the provisions of section 20, chapter 26, Compiled Statutes, it is the duty of judges and clerks of election to return a true list of the persons voting at that election and certify the same. It is also the duty of the judges and clerks to certify the aggregate number of votes cast for each person voted for, but it is no part of their duty to certify that certain persons received a specified number of votes as a democrat and a certain number as people's independent, or otherwise, and such certification has no force or effect.

2. ———: DUTY OF COUNTY CLERK: CANVASSING RETURNS: CERTIFICATE OF ELECTION: CLASSIFICATION OF VOTES. By section 46 of the above chapter it is made the duty of a county clerk, upon the reception of the returns from each election precinct, ward, etc., and within six days after the closing of the polls, together with two disinterested electors chosen by himself, to open the poll books and make abstracts of the votes cast * * * for members of the legislature from the county alone on one sheet, and " of votes for members of the legislature by districts comprising more than one county, on another sheet," and by section 48 the clerk is required to make out a certificate of election to the person having the highest number of votes. *Held,* That it was the duty of the clerk to issue a certificate to the person having the highest number of votes, and that he had no authority to classify the votes cast for a candidate as people's independent, democratic, or otherwise.

ORIGINAL application for *mandamus.*

*L. G. Hurd, G. M. Lambertson,* and *A. W. Agee,* for relator.

*Thomas H. Matters,* and *John M. Ragan, contra.*

MAXWELL, CH. J.

This is an application for a *mandamus* to compel the defendant Stein to issue a certificate of election to the relator.

The cause of action, as set forth in the amended affidavit, is as follows:

"S. W. Christy, the relator, being first duly sworn says and represents to the court, that he is a citizen of the United States, and of the state of Nebraska, and has been for more than two years last past, and continuously to the present time, a resident elector of the county of Clay, in said state, and is eligible to the office of state senator for the twenty-fifth senatorial district, in the state of Nebraska, which said senatorial district is composed of the counties of Clay and Hamilton and no others; that the respondent, Herman E. Stein, is, and has been for more than two years last past, the duly elected, qualified, and acting county clerk of the said county of Clay, which is the first county named in the law designating the said senatorial district.

"That at the general election in said senatorial district held on the 8th day of November, 1892, the relator was a candidate for the office of state senator, from said senatorial district, and that the several election boards in the several precincts in the county of Clay duly made returns to the respondent as county clerk of Clay county, Nebraska, of all the votes cast in the several voting precincts respectively, in said county including those cast for state senator for said twenty-fifth senatorial district, and that within six days after the 8th day of November, 1892, the said county clerk, together with two disinterested electors and residents in said county who were selected by him for that purpose, canvassed the votes of the several precincts in said county, which had been duly returned to him as such county clerk by the several election boards in said county, including the votes cast for state senator in said district, and made an abstract thereof as provided by law, and found that there had been cast in the several voting precincts in said county for state senator as follows:

57

State, ex rel. Christy, v. Stein.

## CLAY COUNTY.

| NAME OF OFFICE | NAME OF CANDIDATE | School Creek | Eldorado | Harvard, 1st dist. | Harvard, 2d dist. | Leicester. | Inland. | Lynn. | Lewis. | Sutton, 1st dist. | Sutton, 2d dist. | Sheridan. | Marshall. | Lone Tree. | Glenville. | Spring Ranch. | Fairfield, 1st dist. | Fairfield, 2d dist. | Edgar, 1st dst. | Edgar, 2d dst. | Logan. | TOTAL. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Senator 25th District | S. W. Christy | 70 | 51 | 123 | 104 | 58 | 68 | 108 | 67 | 149 | 19 | 28 | 25 | 95 | 68 | 62 | 89 | 92 | 177 | 45 | 84 | 1582 |
| " | L. L. Johnson, People's Ind. | | | 25 | 18 | 77 | | 39 | | 38 | 128 | | | | 44 | 85 | 116 | 81 | 56 | 79 | 76 | 862 |
| " | L. L. Johnson, | 59 | 89 | | | | 75 | | 102 | | | 68 | 105 | 134 | | | | | | | | 632 |
| " | Democrat | | | 35 | 40 | 15 | | 18 | | 56 | 7 | | | | 41 | 16 | 27 | 5 | 13 | 4 | 3 | 280 |

## HAMILTON COUNTY.

| NAME OF OFFICE | NAME OF CANDIDATE | Orville. | Farmers Valley. | Scoville. | Otis. | Beaver. | Valley. | Aurora. | Union. | Deep Well. | Bluff. | Cedar Valley. | South Platte. | Monroe. | Phillips. | Hamilton. | Grant. | City, 1st ward. | City, 2d ward. | City, 3d ward. | TOTAL. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| " | S. W. Christy | 66 | 82 | 27 | 38 | 55 | 111 | 57 | 76 | 37 | 52 | 5 | 91 | 65 | 54 | 23 | 86 | 90 | 99 | 89 | 1203 |
| " | H. W. Castle | 3 | 1 | 4 | 6 | 4 | 3 | 10 | 3 | 1 | 14 | 5 | 10 | 4 | 6 | 2 | 2 | 2 | 7 | 9 | 96 |
| " | L. L. Johnson | 81 | 35 | 96 | 80 | 48 | 92 | 80 | 98 | 107 | 39 | 13 | 101 | 88 | 60 | 113 | 79 | 46 | 47 | 29 | 1232 |
| " | Mart Castle | | | | | | | | | | | | 1 | | | | | | | | 1 |

For the relator, S. W. Christy ...........................1,582
For L. L. Johnson, people's independent...............  862
For L. L. Johnson..........................................  632
For L. L. Johnson, democrat.............................  280

which were all the votes cast for the office of state senator at said election in the county of Clay.

"The relator further states and shows to the court, that in the county of Hamilton the several election boards in the several voting precincts in said county duly made returns of all the votes cast at said election so held in said county on November the 8th, 1892, including the votes cast for state senator for said twenty-fifth senatorial district in said county, to the county clerk of said county, and that within six days after the said 8th day of November, 1892, L. W. Shuman, who was the duly qualified and acting county clerk of said county of Hamilton, together with two disinterested electors selected by him for that purpose, duly opened and canvassed the returns of the votes cast in said county including the votes cast for state senator in said twenty-fifth senatorial district, and made an abstract thereof as required by law, and found that the votes cast for state senator in said county were as follows, to-wit:

For the relator, S. W. Christy.....................1,203 votes
For L. L. Johnson.................................1,232 votes
For H. W. Castle...................................  96 votes

"That the foregoing were all the votes cast in either of said counties for said office of state senator for said twenty-fifth senatorial district; that within six days after the holding of said election, on the 8th day of November, 1892, the county clerk of Hamilton county duly transmitted by mail to the county clerk of Clay county, Nebraska, Herman E. Stein, respondent herein, a certified copy of the abstract of all the votes cast in said county of Hamilton, for the office cf state senator for said twenty-fifth senatorial district, and notwithstanding the relator herein received

the highest number of votes cast for any person for state senator in said senatorial district, as it appears by the returns made by the several election boards in said counties of Clay and Hamilton, composing said senatorial district, and as it appears by the canvass of votes and the abstracts thereof made by the canvassing board in said counties respectively, a copy of said abstracts, which were compared by the respondent and disinterested electors, are hereto attached marked A and B, and made part hereof, yet the said respondent, Herman E. Stein, refused, and still refuses, to issue to this relator a certificate of election to the office of state senator for the twenty-fifth senatorial district, although this relator has demanded of the said respondent that he issue to him, this relator, such certificate.

"The relator therefore prays that a peremptory writ of *mandamus* may issue, commanding the respondent, Herman E. Stein, to forthwith issue to this relator, S. W. Christy; a certificate of his election to the office of state senator for the twenty-fifth senatorial district of the state of Nebraska, composed of the counties of Clay and Hamilton, and for such other relief as the relator may be entitled to, and for costs."

The defendant Johnson was permitted to intervene and filed an answer in which he admits the facts stated in the first, second, third, fourth, and fifth paragraphs of the affidavit except as to the abstract of the votes made by the board of canvassers. He then alleges:

"At the election held on November 8, 1892, in the twenty-fifth senatorial district, comprising the counties of Clay and Hamilton, there were three candidates for said office, to-wit, S. W. Christy, L. L. Johnson, and H. W. Castle; that L. L. Johnson was duly nominated by the people's independent party, which nomination was duly certified according to law to the county clerk of Clay county, Nebraska, and within the time prescribed by law, and no objection was made thereto; that L. L. Johnson

was also nominated by the democratic party in said district, and his nomination was duly certified to the county clerk of Clay county, Nebraska, according to law, and within the time prescribed by law, and no objection was made thereto; that the county clerk of Clay county, Nebraska, who is respondent herein, was also the chairman of the republican county central committee of Clay county, Nebraska, and of the twenty-fifth senatorial district of the state of Nebraska; that immediately preceding the election held November 8, 1892, said county clerk of Clay county, Nebraska, proceeded to and did write in the poll books as sent out by him to the various polling places in Clay county, Nebraska, the name of this answering defendant as the candidate of two different parties, and also in part of the poll books putting no political designation for the office of this answering defendant, and in all of the poll books sent out by him he placed no political designation after the name of the relator of this action; that within the time prescribed by law L. L. Shuman, who was the duly qualified and acting county clerk of Hamilton county, Nebraska, together with two disinterested persons, being freeholders, selected by him for that purpose, duly opened and canvassed the returns of the votes cast in said county, including the votes cast for said state senator in the twenty-fifth senatorial district, and made an abstract thereof as required by law, and duly certified the same to the county clerk of Clay county, Nebraska; that within the time prescribed by law the votes as cast at the general election held in Clay county on the 8th of November, 1892, were returned to the county clerk of Clay county, Nebraska, and within the time prescribed by law the clerk selected two disinterested persons, being freeholders, who, together with the county clerk of Clay county, Nebraska, comprised the board of canvassers of said county, and on the 14th day of November, 1892, said board canvassed the vote of said county of Clay and state of Nebraska, and made the fol-

lowing abstract of election in relation to the matter now before this court:

" 'ABSTRACT OF ELECTION.

" '*Abstract of Votes Cast in Clay and Hamilton Counties, Nebraska, at the General Election, held on Tuesday, the eighth day of November, 1892.*

" 'For the office of senator twenty-fifth district there were fifty-eight hundred eighty-eight votes cast, which were cast for the persons as stated in the following schedule, to-wit:

" 'Name of office, senator twenty-fifth district.

" 'Names of persons, number of votes cast for each. Figures voted for: S. W. Christy, 2,785; H. W. Castle, 96; Mart Castle, 1; L. L. Johnson, 1,864; L. L. Johnson (people's independent), 862; L. L. Johnson (democrat), 280.'

" That on the 14th day of November, 1892, the board of canvassers made full return of their acts and doings in relation to the matter hereinbefore set forth and declared the result of their computation in words and figures following, to-wit:

" ' We, the undersigned, H. E. Stein, county clerk of said county, and W. A. Ward and J. E. Wheeler, two disinterested householders of the county, chosen by the said county clerk, acting as a board of county canvassers for said county, do hereby certify that the foregoing is a correct abstract of the votes cast at the aforesaid election according to the poll books returned from the several precincts in said county. We further certify that at the said election the following persons were duly elected to the office stated opposite their respective names:

| NAMES OF PERSONS ELECTED. | NAME OF OFFICE. |
| --- | --- |
| L. L. Johnson ........................ | Senator 25th Senatorial District. |

" ' In testimony whereof we have hereunto set our hands

and caused this to be attested by the seal of said county, this 14th day of November, 1892.

" ' [SEAL.] ·                                H. E. STEIN,
                                         " ' W. A. WARD,
                                         " ' J. E. WHEELER,
                                              " ' *Canvassers.*'

"That according to the returns of the canvassing board of Clay county, Nebraska, as hereinbefore set forth, L. L. Johnson received 3,006 votes, and S. W. Christy 2,785 votes, and H. W. Castle 96 votes; that after the returns were made, as herein set forth, and canvassed by the board of canvassers of Clay county, Nebraska, and the result declared by them as above set forth, the county clerk of Clay county, Nebraska, refused to issue to this defend- ant a certificate of election according to law, and on the 15th of November, 1892, this answering defendant served notice upon the county clerk of Clay county, Nebraska, that he would appear before the district court of Clay county, Nebraska, then in session at Clay Center, Nebraska, the county seat of said county, on the 16th day of Novem- ber, 1892, at 9 o'clock A. M. of said day, and ask for a peremptory writ of *mandamus* to issue, compelling the county clerk, the respondent herein, to issue to this answer- ing defendant a certificate of election according to law. On said 16th day of November, 1892, this defendant appeared before said court and presented said cause to said court. The respondent in this action, also being the respondent in that action, appeared before said court personally and with his attorneys, Hon. S. W. Christy (who is the relator herein and while appearing on the face of the record for Stein, in truth and in fact he appeared in said action for himself), Hon. L. G. Hurd, and Hon. George W. Bemis, who are the attorneys for the relator in this action, and resisted said application before said court, and the court thereupon, after full consideration of the same, issued an alternative writ of *mandamus*, set forth in the respondent's answer in this mat-

State, ex rel. Christy, v. Stein.

ter, returnable on the 17th day of November, 1892, at 9 o'clock A. M. of said day."

A copy of the sample ballot is set out in the answer of the defendant Stein.

Section 20 of chapter 26, Compiled Statutes, is as follows: "The county clerk, previous to the opening of the polls, shall prepare duplicate poll books, in the manner and form following:

"Poll books of an election held in ———— precinct, ———— township, or ———— ward, in ———— county, on the ———— day of ——, A. D. ——, at which time A. B., C. D., and E. F. were judges, and G. H. and I. K. were clerks of said election—the following named persons voted thereat:

"NUMBER AND NAMES OF ELECTORS.

| No. 1. | A. B. | No. 3. | E. F. |
| No. 2. | C. D. | No. 4. | G. H. |

"We do hereby certify that the above is a true list of the persons voting at the above named election.

"Attest:
  "A. B.,
  "C. D.,　　　　　　　　　　G. H.,
  "E. F.,　　　　　　　　　　I. K.,
   "Judges of Election.　　　　　　Clerks.

"TALLY LIST OF PERSONS VOTED FOR, AND FOR WHAT OFFICE, CONTAINING THE NUMBER OF VOTES FOR EACH CANDIDATE.

| Governor. | Member of Congress. | County Clerk. | |
| --- | --- | --- | --- |

"We hereby certify that A. B. had —— votes for governor, and C. D. had —— votes for governor; that E. F. had —— votes for member of congress, etc.

"Attest:
  "A. B.,
  "C. D.,　　　　　　　　　　G. H.,
  "E. F.,　　　　　　　　　　I. K.
   "Judges of Election.　　　　　　Clerks."

Section 46 provides that the county clerk, within six days after the closing of the polls, together with two disinterested electors of the county, to be chosen by himself, shall open the poll books and from the returns therein shall make abstracts of the votes in the following manner: Of votes for governor, etc., on one sheet. Of votes for presidential electors, on another sheet. Of votes for members of the legislature from the county alone, on another sheet. Of votes for members of the legislature by districts, comprising more than one county, on another sheet, etc.

Section 48 requires the clerk to issue a certificate of election to the person having the highest number of votes for the several county and legislative offices.

It will thus be seen that it is the duty of the several election boards to send to the county clerk a true list of the names of persons voting at the election over which they presided, and to add up the votes cast for the several persons voted for and certify the same to the county clerk. Such board has no more authority to certify the politics of the persons voted for than it would have to certify the color of the hair or eyes of the several candidates or their height, weight, or other immaterial facts. Nor has such certification any force or effect whatever. Neither had the board of canvassers of the county any right or authority to separate the votes cast for the same candidate as a democrat, people's independent, or without any designation. It was their duty to add the whole number of votes cast for each candidate and declare the result, and it is the duty of the clerk to issue a certificate of election to the person having the highest number of votes.

Considerable stress is laid upon the want of authority of the board to declare the result—as though such declaration was, in effect, a judgment. Whatever the rule may be in other states it has never had that effect here; and a declaration in favor of a party while the votes showed

that he had not received the highest number of votes cast for that office would be unavailing. The declaration in this state has never amounted to more than a proclamation of the result of the election. The proclamation in this case showed that the board of canvassers, after adding the votes together in favor of the defendant and the other candidates, found that the defendant Johnson had 3,006 votes in the district, while the relator, his most prominent competitor, had but 2,785, and these figures are admitted to be correct. This would seem to settle the controversy in favor of the defendant.

Considerable stress is laid upon the Australian ballot law of this state, as though it was a scheme to put voters in a strait-jacket and compel them to vote for the candidate of one party alone. The title of the law is, "An act to promote the independence of voters at public elections; to enforce the secrecy of the ballot, and to provide for the printing and distribution of ballots at public expense." The first section provides that printing ballots and cards of instruction at all elections for public officers, shall be at the expense of the county, etc. Section 2 provides for the nomination of candidates. Section 3 provides for certifying said nominations. Section 5 provides for nominating by petition. Section 6 prohibits certifying the nomination of two persons by any nominating body where but one person was to be elected. Section 7 requires the preservation of certificates for two years. Section 8 provides when the certificates shall be filed. Section 9 requires the secretary of state to certify to certain nominations to the county clerk of each county. Section 10 provides the mode of declining a nomination. Section 11 provides for filing objections to certificates of nomination, and declares in case no objection is made, that the officer with whom the original certificate was filed shall in the first instance pass upon the validity of such objection and his decision shall be final unless an order shall be made by a court or

judge having jurisdiction. Section 12 provides for filling the vacancy in case of the death of a nominee, etc. Section 13 requires the use of official ballots upon which shall be printed the name of every candidate whose name has been certified. Section 14 provides for "sample ballots printed upon red or green paper, but in the form of those to be used on election day, each containing the names of the candidates. Every ballot shall contain the name of every candidate whose nomination for any office specified in the ballot has been certified or filed according to the provisions of this act, and no other names. The names of candidates for each office shall be arranged under the designation of the office in alphabetical order according to surnames, except that the names of electors of president and vice president of the United States presented in one certificate of nominations shall be arranged in a separate group. Every ballot shall also contain the name of the party or principle which the candidates represent as contained in the certificates of nomination. At the end of the list of candidates for each office shall be left a blank space large enough to contain as many written names of candidates as there are offices to be filled. There shall be a margin on each side at least half an inch wide, and a reasonable space between the names to be printed thereon, so that the voter may clearly indicate, in the way hereinafter provided, the candidate or candidates for whom he wishes to cast his ballot." Section 15 requires the county clerk to print and provide for said election precinct or district before the election a certain number of ballots. Section 16 provides for correcting errors or omissions in the ballots. Section 17 requires the county clerk to cause to be delivered to one of the judges of each election precinct the proper number of ballots as provided in section 15. Section 18 provides for election districts and booths, the general form of the latter, their location, and the manner in which voters shall enter and use the same. Section 19 pro-

vides for two additional judges to deliver ballots to the
voters for preparation.    Section 20 provides that the voter
shall designate his choice of candidates by placing a ×
opposite the name of the one selected.    These crosses must
be made on ballots furnished by the county clerk in pur-
suance of the provisions heretofore stated, and upon which
two members of the election board shall first write their
names in ink on the back of the ballot.    The remaining
sections relate more particularly to securing the rights of
voters and a free and unobstructed right to exercise the
elective franchise.

The object of the law is "to promote the independence
of voters at public elections."    This is effected by placing
all the nominees of all the parties and those nominated by
petition before the voter on one ticket, and requiring
him to designate the person for whom he votes by a cross
opposite such name.    No name printed on the ballot is
to be counted unless a cross is placed opposite to it.    If a
person receive a nomination from more than one party it
would seem proper to place his name with the nominees of
each party.    This would not entitle a voter to vote more
than once for a particular person.    Suppose a candidate is
known to be a fair-minded man of integrity and ability
and he should receive a nomination from the republican
and democratic parties, he would be the nominee of each
and should, in the opinion of the writer, be placed on the
ballot as the nominee of each of said parties.    The object
of requiring the designation of the party making the nom-
ination is not to build up any particular party, but to pre-
vent deception by making it appear to voters that a certain
person was the nominee of a party when in fact he was
not.    Besides, this question cannot be considered at this
time.    The certificates of nomination were properly made
and settled and the sample ballots prepared and submitted
before the election, and seem to have conformed in all re-
spects to the requirements of the law.    This question will
be further considered under the second subdivision.

State, ex rel. Christy, v. Stein.

Second—It will be observed from the synopsis of the several sections of the statute above given that the county clerk is to place the names of all persons nominated in any of the modes provided on the sample ballots, and that they shall be in possession of the clerk and open to public inspection at least six days before the election. This sample ballot is to be in the form of the official ballots. If the sample ballot is unsatisfactory to any one party the law provides a summary remedy for its correction

In the answer of Mr. Stein it appears that he placed the name of L. L. Johnson at first in but one place in the sample ballot; that the chairman and secretary of the democratic county central committee and the same officers of the people's independent county central committee protested against this form and insisted that as two nominations had been made by distinct parties that each party was entitled to have its nominees placed separately on the ballots. They also notified him that unless the error was corrected they would apply to the proper tribunal for redress. Stein at first refused to make the correction on the ground it would not be legal, but after consulting eminent counsel he sent the officers above named the following letter:

"CLAY CENTER, Oct. 29, 1892.
"Hon. N. M. Graham, Chairman, and Geo. A. Shike, Secretary, People's Independent Party.

"GENTLEMEN: Upon the receipt of your favor of the 25th inst., requesting that the official ballot to be used at the coming election to be held November 8, 1892, be printed in a form suggested by you different than from that intended by me, and being anxious to do exact justice and comply with the law, I offered to submit the question to the supreme court for its decision, and upon your refusal, and you having employed the county attorney, whose duty it is to advise me in regard to my official duties, I immedialy took the train to Lincoln and submitted the question to able counsel in that city so as to get a disinterested, un-

biased opinion, and he being of the opinion that either the form suggested by you, or the one intended by myself, would be legal, and you representing different parties from myself, and rather than appear to be taking an advantage of a political opponent by reason of my official position, and having just returned home this morning and take this method of informing you that I have concluded to grant your request and print the ballots as you suggest.

"Yours truly,         .         H. E. STEIN,

"*County Clerk.*"

That is, that the defendant Stein, having consulted able counsel, was advised that the ballots as he was requested to make them would be valid, and therefore he framed them as desired. Thus, all parties, after examining the statute and consulting learned attorneys, came to the conclusion that the form of the ballot here used was the proper one, and acted honestly in that belief. That was their construction of the statute and no doubt was correct. If no objection is made to the form in which names on the ballots are submitted, or if made, decided, and such ballots are used at the election, it will be too late thereafter to raise the objection, provided all the names certified to the clerk were placed upon the sample and official ballots. There is no complaint on the latter ground and it is now too late to raise objections to the *form* of the ballots.

In the original affidavit filed by the relator in this court on November 14, 1892, which is part of the files, we find the following allegations:

"That your relator was the nominee of the republican party regularly nominated and whose name regularly appeared on the official ballots as the republican candidate, which were prepared and used by the voters at said election in said district; that L. L. Johnson, a citizen and resident of said county and district, was also a candidate for said office of state senator in said district and was nominated for said position by the people's independent party

and was also nominated for said office by the democratic party of said district; that the defendant Herman E. Stein, whose duty it is by law to prepare the ballots used by the voters in said county for said office at said election, prepared said ballot intending to have the same used in the following form:·

SENATORIAL.

| For Senator 25th District. | Vote for one. |
|---|---|
| S. W. Christy.................................Republican. | |
| L. L. Johnson.................. { Democrat. People's Independent. | |

Placing the name of said Johnson on said ballot in but one place and followed by the words democrat—people's independent.    But upon the written demand of said Johnson and the chairman of the county central committee of both the people's independent and democratic parties, and · by threats of legal proceedings, the said defendant Herman E. Stein so changed the form of the ballot, which ballots were used, so as to present the name of said L. L. Johnson, followed by the words, 'people's independent,' and also printed in another place on said ballot the name of L. L. Johnson, followed by the word 'democrat,' so that on each ballot presented, prepared for use, and used by the voters at said election in said county of Clay, the name of said L. L. Johnson appeared in two places, in one as people's independent and in the other as democrat.    Said ballot, as prepared, printed, and used at said election, was in the exact form for said office of state senator as follows, to-wit:

SENATORIAL.

| For Senator 25th District. | Vote for one. |
|---|---|
| S. W. Christy.................................Republican. | |
| L. L. Johnson....................People's Independent. | |
| L. L. Johnson .. ..............................Democrat. | |

"Your relator further shows that the ballots prepared

for use and used by the voters of Hamilton county in said
district were in the following form to-wit:

SENATORIAL.

| For Senator 25th District. | Vote for one. |
| --- | --- |
| S. W. Christy, Edgar, Clay Co..............Republican. | |
| H. W. Castle, Marquette, Hamilton Co...Prohibition. | |
| L. L. Johnson, Inland, Clay Co.. { Democrat and People's Independent. | |

"Your relator alleges and avers that the use of the bal-
lot printed as above stated by the county clerk of Clay
county, Nebraska, and used at the election aforesaid for
said office of state senator in said twenty-fifth district,
was a deception and fraud upon the voters of said district,
and gave the said Johnson an undue prominence on said
ballot and an undue advantage over your relator at the
said election.    That while many democrats would not have
voted for a people's independent candidate, but seeing the
name L. L. Johnson followed by the word democrat with-
out the words people's independent, voted for said John-
son, and many members of the people's independent party
would not vote for a democrat and not knowing the dem-
ocrats were running the said Johnson as their candidate for
the same office, and seeing the name L. L. Johnson fol-
lowed by the words people's independent without the word
democrat, likewise voted for Johnson, both names being the
same identical person and candidate for the same office."

These statements are sworn to positively by the relator.
After the filing of this affidavit the relator asked and ob-
tained leave to file an amended one in which nearly all
these allegations are omitted, and he claims the office upon
the broad ground that he had the largest number of votes
cast at said election.

It may be said that the court should not refer to the first
affidavit filed.    The court, however, in permitting an
amended affidavit to be filed, did not permit the relator to

take the first one off the files without the consent of John-
son.   In his first he makes a sworn statement that these
votes were cast for Johnson as one person, and he nowhere
denies it in his second.   He also alleges as his ground for
relief that Johnson thereby acquired an undue advantage.
It is not claimed that there was any misrepresentation or
that a single voter was thereby induced and did vote dif-
ferently from what he intended, or that the result was to
affect, much less change, the election.   In no view of the
case therefore does either of the affidavits state a cause of
action.

In conducting a free government, parties are necessary.
Parties, however, are formed to carry out certain specific
objects.   If the government is free to the full extent, it
will be based upon equitable and just laws, with fair and
impartial courts, open and ready, as far as possible, to
redress grievances; in other words, where the rights of
each and every one are protected and enforced.   The courts
are for the people, not a party, and every person may con-
fidently appeal to them with the assurance that his rights
and not his politics, when they are not involved, will be
considered and adjudicated.   If a court, upon some pretext
which may nearly always be found, may throw out votes
lawfully cast and thus defeat the will of the electors,
government by the people to that extent is defeated, and
an example of disregard of law set before them by the
guardians and exponents of the law.   It is the duty of all
courts to carry out the lawfully expressed will of the
electors as declared through the ballot box; and that duty
this court not only recognizes, but will duly enforce.   It
is very clear that the relator has not the highest number
of votes cast for senator of the twenty-fifth district, and
that defendant Johnson has the highest number of such
votes.   The writ is therefore denied and the

ACTION DISMISSED.

58

NORVAL, J., concurs in result and the propositions stated in the syllabus.

POST, J., concurs.