THE STATE OF KANSAS, *ex rel. J. J. Anthony*, v. E. G. BARTON, *as County Clerk of Gray County, et al.*
#### No. 9296.
1. MANDAMUS TO CONTEST COUNTY-SEAT ELECTION — *entire proceedings open to review in.* In a mandamus proceeding to contest a county-seat election, brought after the election is held and the result declared, every matter affecting the validity of the election, including the sufficiency of the petition on which the election was ordered, may be investigated and determined.

2. ———— *participating in election does not estop from instituting.* Electors of the county who participated in the election are not estopped from instituting the statutory contest questioning the validity of the election.

Error from Gray District Court. Hon. A. J. Abbott, Judge. Opinion filed December 11, 1897. *Reversed.*

*H. F. Mason*, for plaintiff in error.

*James B. Naylor*, County Attorney, *Peters & Nicholson*, and *Sutton & McGarry*, for defendants in error.

JOHNSTON, J. This was a proceeding in mandamus, brought to contest an election held for the purpose of determining the location of the county seat of Gray County. In the alternative writ it is alleged that, by a vote of the electors of the county, the county seat was, on February 13, 1887, located at the town of Ingalls; that on January 10, 1893, a petition was presented to the Board of County Commissioners, requesting the calling of an election to vote upon a proposition to remove the county seat from Ingalls to the town of Cimarron; that the petition was signed with the names of 306 persons, purporting to be electors of the county, and that of these, three were of persons who never signed the petition or authorized their names to be signed to it, three were the names of minors, fifty were the names of persons who were

not electors or residents of the county, two were the names of persons who asked to have their names stricken from the petition, and ninety-seven were the names of persons whose names did not appear on the last assessment rolls of the county. It is alleged that the number of electors in the county at the time the petition was presented was 510; that the number of electors as shown by the last assessment rolls was 487; and that, notwithstanding the insufficiency of the petition, the board, upon the authority thereof, ordered an election to be held on February 13, 1893, on which day the electors of the county generally assembled at the polling-places and balloted upon the question of the removal of the county seat. On February 18, 1893, the Board of County Commissioners canvassed the returns of that election and declared that Cimarron had been chosen as the county seat of the county; and under color of that declaration the county officers of the county removed their offices to the town of Cimarron and began the transaction of public business at that place. It is finally alleged that, by reason of the invalidity and insufficiency of the petition, as above stated, the order calling the election and all the proceedings depending thereon were wholly void and illegal, and that Ingalls is still the county seat of Gray County. A motion to quash the alternative writ, upon the ground that it failed to state facts sufficient to constitute a cause of action, was sustained by the trial court, and this ruling is assigned for error.

Taking the averments of the writ to be true, as we must, the petition upon which the election was ordered was wholly insufficient. If the petition was fatally defective, it did not warrant the order calling the election, and any election held thereunder was necessarily invalid. This appears to have been conceded;

but the view of the trial. court, as indicated by re-
marks made when the decision was rendered, was,
that the adherents of Ingalls, having taken part in
the election, were estopped from questioning its va-
lidity.    There was an averment in the writ that the
electors of the county generally participated in the
election, from which the trial court inferred that the
relator and those whom he represented had voted at
the election and were therefore precluded from taking
any steps to contest its validity.    It does not appear
that the relator took part in the election, nor do we
think that his participation in the election, or that of
any of the other adherents of Ingalls, affected their
right to institute a statutory contest.    This is a statu-
tory proceeding to contest the validity of the election,
and the statute contemplates that such a contest may
be had after the election has been held.    It authorizes
an inquiry into every preliminary step affecting the
validity of the election, including the sufficiency of
the petition.    Gen. Stat. 1889, ¶ 2778 ; *The State ex
rel. v. Stockwell,* 7 Kan. 98 ; *County Seat of Linn Co.,*
15 id. 525 ; *The State ex rel. v. Eggleston,* 34 id. 714.

Evidently, it was the purpose of the Legislature
that every matter affecting the validity of the election
might be investigated and determined in a single con-
test had after the election was held.    There is nothing
to indicate that the validity of each step in and about
the election must be contested when it is taken, nor
any suggestion that only those who refrain from vot-
ing or participating in the election are authorized to
institute a contest, nor do we see any rule for apply-
ing the doctrine of estoppel in this case.    The fact that
the adherents of Ingalls participated in the election,
the validity of which had not yet been determined,
prejudices no one, and estops no one from exercising

the right to contest which the statute gives. *Smith v. Holt*, 24 Kan. 771. The ruling of the court in sustaining the motion to quash will, therefore, be reversed and the cause remanded for further proceedings.