### 6705

## STATE *EX REL.* BIRCHMORE v. STATE BOARD OF CANVASSERS.

1. ELECTIONS—REGISTRATION.—A CERTIFICATE of a Clerk of Court in the form prescribed by sec. 185, Code of 1902, to the effect that the holder was duly registered prior to January 1st, 1898, as prescribed by the Constitution, is not a registration certificate, and does not entitle the holder to vote upon presentation at the ballot box, but such certificate only secures to the holder the right to registration.

2. IBID.—IBID.—IBID.—An election will not be set aside where the votes cast on clerk's certificates do not change the result or even render it doubtful.

3. IBID.—BALLOTS—CONSTITUTIONAL LAW—ESTOPPEL.—An election held in a county under the provisions of the act, 25 stat., 463, to ascertain whether liquors shall be sold or manufactured within the county, in which the electors in favor of sale were required to vote in one box so labeled, and those opposed in another so labeled, is unconstitu-

tional in that it takes away the secrecy of voting by ballot. An elector is not estopped from making this question by participating in the election.

Petition in the original jurisdiction of this Court by Chas. W. Birchmore for writ of certiorari against State Board of Canvassers, County Dispensary Board for Kershaw County, W. A. Schrock, John McSmyrl and John McSmyrl Distilling Co.

*Messrs. Kirkland & Smith* and *Clarke & Von Fresckow,* for petitioners, cite: *The County Dispensary Board cannot maintain this protest:* 43 S. C., 11. *Managers appointed according to law:* 73 S. C., 398. *Clerk's certificate is a sufficient registration certificate:* 76 S. C., 574, art. II, sec. 4, subds. b. c. Con.; 55 S. C., 90; Code 1902, 181, 202, 206, 190, 191, 193, 213; art II, secs. 12, 13, 9, 11. *Mere irregularities in elections do not make them void unless the number is great enough to affect the general result:* 10 Ency., 770-1; 16 Mich., 311. *In elections of this kind the elector has no right to the secrecy of the ballot:* Con. 1868, art. VIII, sec. 1; Con. 1895, art. X; art. II, sec. 1; Con. of Ark., art. III, secs. 2, 3; Con. of Cal., art. 2, sec. 5; Con. Col., art. VII; Con. Conn., art. 6, sec. 7; Con. Del., art. VIII; Con. Fla., art. VI, sec. 6; Con. Ga., art. II, sec. 1, par. 1; Con. Idaho, art. VI, sec. 1; Con. Ill., art. VII, sec. 2; Con. Ind., art. II, sec. 1-13; Con. Ia., art. II, sec. 2; Con. of Kan., art. IV, sec. 1, Con. 1850; Con. Ky., sec. 147; Con. La.; Con. of Me., art. II, sec. 1; Con. of Md., art. 1; Con. of Mich., art. VII, sec. 2; Con. of Minn., art. VII, sec. 6; Con. of Miss., art. XII, sec. 140; Con. of Mo.; art. VIII, sec. 2; Con. of Ma., art. IX, secs. 1-12; Con. of N. C., art. VI, sec. 3; Con. of N. Da., art. V, sec. 129; Con. Ohio, art. V, sec. 2; Con. of Or., art. II, sec. 1; Con. of Neb., art. VII, sec. 6; Con. of Nev., art. II, sec. 3; Con. of N. H., art. II; Con. of N. Y., art. II, sec. 5; Con. of Pa., art. VIII, sec. 4; Con. of Va., art. III, sec. 2; Con. S. Da., art. VII, sec. 3; Con. of Tenn., art. IV, sec. 4; Con. of Tex., art. VI, sec. 4;

Con. of Wash., art. VI, sec. 6; Con. of W. Va., art. IV, sec. 2; Con. of Wis., art. III, sec. 3; Con. of Wy., art VI, sec. 2; 10 Ency., 562, 518; 90 Wis., 157; Cent. Dig., Vol. 18, 230-1; *Bew* v. *State,* 71 Miss.; 88 Ky., 502; 57 S. C., 126; 19 Ency., 488, 489, 490, 491, 492; art. VIII, secs. 5, 7, 8, 11; Con. 1895, art. VII, secs. 1, 2, 3, 4, 5, 6, 7, 8, 10, 12; art. XVI, secs. 1, 2, 3; 1 L. R. A., 483. *Qualification of voters in a local option election:* 10 Ency., 577, note 2; 19 Ency., 515; 108 Mass., 418; 52 S. C., 126. *Provisions of Carey-Cothran act as to election are merely directory and in absence of fraud failure to carry them out is not fatal unless they change the result:* 1 L. R. A., 656; 52 S. C., 298; 153 Ind., 440; 10 Ency., 767, and notes; 768, and notes; 769, notes; 588, and notes; 6 Ency., 327, and notes; 26 Neb., 514; 86 Ky., 596; Code 1902, 206, 210; 52 S. C., 298. *Taking away the secrecy of the ballot does not vitiate an election unless this right is given by Constitution or Statute:* Cool. Con. Lim., 910, 922, 911, 778. *Failure to comply with confused and ambiguous directions in a statute does not vitiate an election where the act was bona fide and free from fraud or fraudulent design:* Cool. Con. Lim., 782-3; 10 Ency., 697; L. R. 10 C. R., 751; 7 S. C., Cand., 247; L. R. 16 Q. B. Div., 739; 17 Kan., 347; 2 N. S. Wales L. R., 82; 16 L. R. A., 754; 6 Ency., 352; L. R. 10 C. P., 733; 25 Fed., 865; 109 Ga., 183; 20 S. C., 361; 76 S. C., 514. *Contestants are estopped because of participation in the election:* 61 L. R. A., 325; 49 L. R. A., 353; 30 L. R. A., 394; 58 L. R. A., 394; 20 Ency., 1103, 1107; 96 Am. Dec., 350; 57 S. C., 317; 29 Ency., 1103; *Ex parte Smith,* 8 S. C.; 23 S. E., R., 307; 13 La. Ann., 301; 10 Ency., 769; 31 Neb., 82; 91 Cal., 432; 11 L. R. A., 534; L. R. 1 Q. B., 433; 16 L. R. A., 754; 73 Ill., 132; 93 Ill., 240; 98 Ill., 632; 32 Fla., 545; 19 S. E. R., 557; 7 Neb., 381; 62 S. C., 105; 57 S. C., 125; 70 Ill., 25; 72 Ill., 241.

*Messrs. Bellinger & Welch,* contra.   No argument furnished Reporter.

November 16, 1907. The opinion of the Court was delivered by

Mr. Chief Justice Pope. The relator, Chas. W. Birchmore, on behalf of himself and numerous other qualified electors of Kershaw County, by his petition seeks a writ of certiorari from this Court to the State Board of Canvassers for the purpose of having the Court review the findings of said board in the contest of an election held in Kershaw County on the 20th of June, 1907, under an act of the General Assembly approved February 16, 1907, entitled "An act to declare the law in reference to and to regulate the manufacture, sale, use, consumption, possession, transportation and disposition of alcoholic liquors and beverages within the State and police the same." 25 Stat., 463. The sections germane to the discussion are:

Sec. 3. "At such election the election commissioners for such county shall at each voting precinct therein provide two ballot boxes in which the ballots must be cast. Any person who is a qualified elector of such county may vote in said election. Every voter who may be in favor of the sale of liquors and beverages in such county shall cast a ballot in the box provided therefor, on which shall be printed the words, 'For Sale;' and every voter opposed shall cast a ballot upon which shall be printed the words, 'Against Sale.' Every voter who may be in favor of the application of one-third of the dispensary profits to the county school fund shall cast a ballot in the box provided therefor, upon which shall be printed the words, 'For School Fund;' and every voter opposed thereto, but in favor of its application to roads and bridges shall cast a ballot upon which shall be printed the words, 'For Roads and Bridges.'"

Sec. 37. "Any county may prohibit the manufacture and sale hereinbefore licensed within its limits in the following manner: Upon the petition of one-fourth of the qualified voters of such county for an election upon the question of manufacture therein being filed with the supervisor of said county, he shall order an election submitting the question of

manufacture or no manufacture; which election shall be petitioned for, ordered and conducted in the same manner as provided in sections 2, 3 and 4 of this act, except that the ballots shall be 'For Manufacture' and 'Against Manufacture.' "

The illegality alleged by the contestants was the permitting of certain persons to vote without registration certificates and such arrangement of the ballot boxes as practically amounted to *viva voce* voting. The facts upon which these allegations are based are as follows: Pursuant to general instructions issued by the commissioners of elections, upon the question of sale or no sale of liquors, two ballot boxes were provided and used at each place in the county; upon one of the boxes were the words, "For Sale," and upon the other box the words "Against Sale." Persons favoring the sale of intoxicants were required to cast their ballots in the box labeled "For Sale," and those opposed were required to cast their ballots in the box labeled "Against Sale." A similar arrangement was made as to the boxes for the determination of manufacture and application of the profits. Also in eight boxes one hundred and forty-four persons registered prior to 1898 were allowed to vote upon the production of certificates of the clerk of the Court of Kershaw County, of which the following is an example:

"I, I. P. Hough, Clerk of Court of Kershaw County, do hereby certify that the name of W. R. Hough appears upon the book in my office as No. 19, duly reistered in Buffalo Township prior to January the 1st, 1898, under Article 11, section 4, subdivision (c) of the State Constitution.

"Camden, S. C., this 29th day of May, A. D. 1907.

"I. P. HOUGH (S.), Clerk of Court of K. C."

The county board of canvassers upheld the election but on appeal to the state board it was declared null and void and set aside on the two grounds contended for by the contestants.

30—78

It has been held by this Court that the production of a registration certificate is a condition precedent to legal voting in elections in this State. *Wright v. Board of Canvassers,* 76 S. C., 574. In his petition to this Court the relator seeks to show that a certificate such as the one above set out is a sufficient registration certificate as to electors registered prior to 1898. · The Constitution provides that such certificates "shall be sufficient evidence to establish the right of said citizens to any subsequent registration and the franchise under the limitations herein imposed. Art. II, sec. 4, sub. c. In order to construe this section consistently with the holding in the case of *Wright* v. *Board of Canvassers, supra,* we must overrule relator's contention. The language of the Constitution is plain. The first division of the clause above quoted provides that the certificate shall be sufficient evidence for subsequent registration. Subsequent registration certainly means any registration after the first registration prior to the 1st of January, 1898. Thus registration for a municipal election, or registration in a newly created county, or any other conceivable instance in which registration might be required can be secured by the production of the clerk's certificate. Thus it was clearly not the intention to make the certificate of the clerk a registration certificate but it was intended as evidence of qualification by which such certificate could be secured. It is expressly provided that the franchise is secured "subject to the limitations herein imposed." Now one of those limitations is that the voter shall have a registration certificate and the Legislature has provided that he shall produce it at the polls before he can legally vote. The importance of this certificate is emphasized in the case of *Wright* v. *Board of Canvassers* above referred to, hence we shall not dwell upon it here. Suffice it to repeat that it was there held that the production of such certificate was a condition precedent to legal voting.

But are not certificates such as that above set forth really registration certificates? We think not. In the first place,

the Legislature has provided that the registration certificate shall contain a statement of the elector's name, age and place of residence as entered in the registration books, and such certificate shall be signed by at least two of the members of the board of registration. The form of the certificate is likewise established. Vol. 1, Code of Laws 1902, sec. 185. It is not expedient to discuss here the advisability of this legislation, but we think it very clear. The intelligent conduct of elections, the prevention of fraud, and other like objects are in view. The clerk's certificate does not set forth the facts required by law, therefore it does not comply with the legislative enactment. Such a certificate is primarily for the purpose of securing registration. Registration having been secured, the necessary certificate must follow. Where an elector, through negligence or for other reasons, fails to secure his certificate, hard as it may seem in some cases, yet he must pay the penalty, namely, the denial of the right to cast his ballot.

However, if this be the only irregularity in the election we do not think it necessarily follows that it must be set aside. The finding of the county board, which was not reversed by the State board, was to the effect that even if these votes were declared illegal, nevertheless the result would not be changed nor even made doubtful. This distinguishes the case here under consideration from the Wright Case; there the result could not be determined on account of the irregularities. The universal weight of authority is to the effect that where the result of an election is not made doubtful nor changed, that irregularities or illegalities in the absence of fraud will not cause the expressed will of the body of voters to be set aside unless a constitutional provision is violated or it is specifically provided by legislative enactment that such irregularity or illegality shall invalidate the election. Thus it is said in Vol. 10 A. & E. Ency. of Law, page 766, where authorities from numerous State Courts as well as the United States Courts are quoted: "The general principles to be drawn

from the authorities are, that honest mistake or mere omissions on the part of election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not avoid an election unless they affect the result, or at least render it uncertain."

(See also 15 Cyc., pages 372 and 416 and authorities.)

But there are other objections raised by the respondents. They allege that they were deprived of the privilege of the secrecy of their ballots. The Constitution, Art. II, sec. 1, provides: "All elections by the people shall be by ballot, * * * " The meaning of the phrase "by ballot" was extensively discussed in the case of *State* v. *Shaw,* 9 S. C., 94, 141. That case arose over a contest as to the election of a Circuit Judge. The Constitution of 1868, Art. IV, sec. 13, provided that Circuit Judges should be elected by joint ballot of the General Assembly. Shaw was elected *viva voce.* On account of the importance of the case the Justices deemed it expedient to render their opinions *seriatim.*

Justice Haskell, after reviewing numerous legal and literary authorities, reached the conclusion that the word "Ballot" implies secret voting.

Justice McIver uses the following language: "The sole question involved in this case is, whether an election of a Circuit Judge by the General Assembly voting *viva voce* is a valid election. To determine this question, it is necessary to consider the provisions of the Constitution of this State relating to this subject, for the purpose of ascertaining whether that instrument requires such election to be made in any particular mode, and, if so, what that mode is. For no one will deny that if, by the terms of the Constitution, the election is required to be made in any particular mode, that mode is essential to the validity of such election, and a person who has been elected in any other mode has no legal title to the office.

"It cannot escape the attention of the most casual reader of the Constitution that there are two distinct modes of

voting, not only provided for, but prescribed by that instrument in express terms—the one by ballot and the other by the *viva voce* system.   It is likewise equally certain that these modes of voting differ in one, at least, most essential particular, the one implying secrecy, the other involving publicity."

Numerous other authorities are to the same effect. *Johnson* v. *The Corporation of Charleston,* 1 Bay, 441; *Williams* v. *Stein,* 10 Am. Rep., 97; *People* v. *Pease,* 27 N. Y., 45; *Temple* v. *Mead,* 4 Vt., 535; *People* v. *Cicctt,* 16 Mich., 283; Cooley's Const. Lim., 604; Bouvier's Law Dictionary; Wharton's Law Dictionary.

Therefore, if the constitutional mandate applies to the election here under consideration such election is void, for as said by Justice McIver in the language above quoted, if, by the terms of the Constitution, the election is required to be made in any particular mode, that mode is essential to the validity of the election.   The relator contends, however, that the section does not apply, as this was not an election of an officer nor such a one as is provided for by the Constitution. Let us consider this proposition.  By an attempted distinction of the general and special significance of "election," the relator seeks to take the controversy here in question from the protection of the provisions of the Constitution invoked by the respondents.  He would show that the phrase "all elections" was used by the framers of the Constitution in reference only to elections of officers and special elections provided for in the Constitution, and cites *Seaman* v. *Baughman,* 82 Iowa, 216; and *Martin* v. *School District,* 57 S. C., 126, 35 S. E., 517, to support his contention.   We cannot approve, nor do we think these cases sustain, so narrow a construction.  An election is the expression of a choice by the voters of a body politic, and it seems to us that the preference so expressed, whether it be for a particular individual or in favor of a stated proposition is nevertheless an election.  The rule thus laid down in 10 Am. & E. Ency., 562, seems to be sustained by reason and authority.  After defining the broad.

use of the term election the writer proceeds: "In a narrower sense the term is limited to the choice of persons for political offices by the vote of the people or of a somewhat numerous body of electors, as distinguished from an appointment by a single person, *and to the determination of other questions submitted by law to popular vote.* Of the latter class, which are called elections in the statute and in the reports of cases, are such questions as the location of county seats, the adoption of municipal charters, *the question of local option,* and the question of incurring municipal indebtedness." It will be noted that by explicit terms the rule thus stated embraces local option elections. In 15 Cyc., 280, practically the same rule is laid down.

But apart from this consideration, even granted that the term as used in the Constitution does not embrace local option elections yet the election is invalid. Relator admits that the Legislature has power to declare in what manner the election shall be held and to signify such irregularities or illegalities as will make it null and void. Has the Legislature exercised that power? The law of 1907, better known as the Carey-Cothran Act, provides that local option elections shall be conducted according to the rules provided for general elections. It will not, in fact it cannot be denied that one of the essentials of a valid general election is that it be by ballot, for the Constitution so provides. Ballot implies secrecy. *State* v. *Shaw, supra,* Therefore, if a general election is held *viva voce* or there are such other irregularities as practically amount to such voting and the electors are deprived of their constitutional right to secrecy in casting their ballots the election is void. Now when the Legislature enacted that this rule of general elections should apply to local option elections it expressly declared that if the rule was not applied that the election would be void, for, as was said above, under the Constitution it is a rule of general elections that if the electors are not permitted to vote by ballot the election is void. It would be highly illogical to hold that the Legislature intended to adopt the rule without

its sanction. Therefore this election must be held invalid unless, as relator contends, the respondents have waived their right to contest the election by taking part in it without objection to the arrangements.

By waiver is meant the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such a right. Therefore in order to constitute waiver the person against whom the waiver is claimed must have full knowledge of his rights and of facts which will enable him to take effectual action for the enforcement of such right. 29 A. & E. Ency., 1091, and authorities. From the nature of the doctrine it may and seems generally to be applied to all rights to which the party is legally entitled. A limitation, however, is usually recognized, and where such waiver would be against public policy it is not allowed to be operative. Would such a waiver as is claimed here by the relator be against public policy? The provision in the Constitution requiring popular elections to be by ballot had in view the purity of elections and the prevention of intimidation of voters at the polls. From earliest times such results have been recognized as highly beneficial to municipalities and commonwealths. While it might appear that primarily the object was to secure benefits to electors, yet we think this purpose can only be regarded as a means to an end. With the right of the individual elector secure, necessarily it must follow that the State's welfare in this respect would be safeguarded. To attempt to enumerate the advantages of a well-regulated franchise would unnecessarily prolong this opinion, yet many of them must be evident to the most casual observer. Therefore, to hold that the respondents in this case are estopped from contesting the election because they cast their ballots in the election without protest at the time we think would be an invasion of the integrity of the franchise system of the State. *Elliott* v. *Burke et al.* (Ky.), 68 S. W., 445; *State ex rel. Anthony* v. *Barton,* 51 Pac., 218.

Of course, if the election is properly conducted, and the elector voluntarily puts aside his privilege of secrecy, the case is entirely different. The point is that he must be allowed the privilege. While in this particular instance it is possible that no evil results followed from the mode in which the election was conducted, yet we cannot be unmindful of the fact that we must be guided by those general principles of law and policy that will enable us to determine future litigation under the election laws of the State consistently. With such principles in view, we are compelled to declare the election here under consideration void.

It is the judgment of this Court, that the petition be dismissed and the writ denied.

Mr. Justice Woods *concurs on the ground that the secrecy of the ballot was not preserved in the election.*