(63 Misc. Rep. 370.)
### In re TOWN OF GROTON, TOMPKINS COUNTY.

(Supreme Court, Special Term, Tompkins County.   May, 1909.)

ELECTIONS (§ 194*) —BALLOTS—NUMBERING.

The fact that the ballots used in submitting the four propositions of Liquor Tax Law (Laws 1896, p. 45, c. 112, as amended by Laws 1908, p. 408, c. 144, § 3), § 16, had numbers printed upon their backs, conforming to the numbers upon the stubs from which detached, enabling any one to compare the ballots with the record of votes kept, and thus acquire a knowledge of how each voter answered the questions, is not a sufficient reason for setting aside the election, where no protest was made to the election officers either before or at the canvass of the votes, and the mistake in not having the number on the stub alone is not shown to have affected the result.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 166; Dec. Dig. § 194.*]

Application for an order for a special town meeting in the Town of Groton to submit the four propositions of Liquor Tax Law, § 16, upon the ground that the same have not been properly submitted at the biennial town meeting theretofore held.   Application denied.

David M. Dean, for petitioner.
Daniel A. Reed, for State Commissioner of Excise.

GLADDING, J.   This is an application for an order to submit to a special town meeting the four propositions of the liquor tax law set forth in section 16 (Laws 1896, p. 45, c. 112, as amended by Laws 1908, p. 408, c. 144, § 3), upon the ground that the same were not properly submitted at a biennial town meeting held in said town on the 9th day of February, 1909.

The statute provides (Liquor Tax Law, § 16) that, if "the four propositions * * * shall not have been properly submitted at such biennial town meeting," an order of the Supreme Court may be granted for their submission at a special town meeting; "sufficient reasons being shown therefor."   The reason relied upon by the applicant in this case is found in the form of the ballot provided by the town clerk and used at such biennial town meeting; and the defect in the ballot consisted in its having a number printed upon the back, conforming to the number printed upon the stub from which it was detached.   All of the ballots voted at such biennial town meeting upon the propositions were so prepared and printed by the town clerk, and it is claimed by the petitioner's counsel that the numbering of the ballots in this manner would enable any one to compare the ballots when counted with the record of votes kept, and thus acquire a knowledge of the manner in which each voter answered the questions, thus destroying the secrecy of the ballot.

Granting this, to be true, is it a sufficient reason for setting aside the election and requiring a resubmission of the questions at a special town meeting?

First, let us observe:   That no person having the right to vote was deprived of that right; that no person not having the right to vote was permitted to; that it is not shown or claimed that any person re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
118 N.Y.S.—27

frained from voting because of the defect in the ballot, or voted differently than he otherwise would; that there was no irregularity that affected the result or rendered it doubtful or uncertain; that it is not claimed that there was any fraud on the part of the election officers or the town clerk or town officers or any other person; that there is no claim made that any one objected to the ballot or protested against its form or against its being cast or counted; that it is not claimed that the result of the vote as cast and counted does not represent the will and true intention of the voters upon the propositions submitted. The sole allegation is that the town clerk, who prepared and whose duty it was to prepare the ballots, erroneously printed the number upon both the ballot and stub, when he should have caused it to be placed upon the stub only.

Does this mistake on the part of that official furnish sufficient reasons for requiring a resubmission of the questions at a special town meeting, in the absence of any proof or claim that the vote or the result was in any manner affected by it? It seems to me that it does not. These ballots were all alike in the respect complained of, those cast for and those against the propositions. The election officers counted them all, determined that they were valid; no one raising an objection or suggestion to the contrary. The ballots plainly disclosed to each voter this defect, and every voter could plainly see the error in the printing of the ballot; but it does not appear that any one made objection. Quite possibly the voters favoring license, or the advocates and leaders of that side of the questions, thought the defect would tend to their advantage; and perhaps it did. At any rate, they did not protest to the election officers, either before or at the canvass of the votes. They waited until the votes were cast and all counted and allowed, and until the result was declared and the official certificate thereof made and filed, showing a majority for "no license," and that the petitioner and those favoring license were defeated. Then they made their protest and complaint. Manifestly their protest should not be allowed unless the law requires it. Section 88 of the election law (Laws 1896, p. 947, c. 909) provides for the correction of the ballots when the error is timely brought to the attention of the officer charged with the duty of preparing them. It cannot be the purpose of the law to afford an opportunity for those interested in the result to proceed to a vote and count, without objection or protest, and then, when the result is adverse to their wishes, to give them another chance upon a palpable error which could have been corrected had they called attention to it; but, aside from the absurdity of such a holding, the principles enunciated in People ex rel. Hirsh v. Wood, 148 N. Y. 142, 42 N. E. 536, are applicable to this proceeding and sufficient to require a denial of this application. It is there said (page 146 of 148 N. Y., page 537 of 42 N. E.):

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them."

The only reason suggested in this case for a new election is the mistake of the person whose duty it was to prepare the ballots in putting

a number upon the ballot corresponding with the number upon the stub, and the only effect of that mistake was to make it possible to determine how each elector voted upon the questions. As was also said in People ex rel. Hirsh v. Wood, 148 N. Y. 148, 42 N. E. 538:

"There is no ground for claiming that the 681 ballots were marked ballots. They were not objected to on this ground at the canvass by the inspectors of election, and this is essential in order to subsequently raise the question.

The purpose of the statute in describing with great detail the duties of election officers is that the choice of the voters may be made manifest and ascertained. When this has been clearly and fairly accomplished, it will not do to thwart the popular will because of the error or oversight of some election officer in the performance of his duty, when it is not claimed that his mistake in any wise affected the result.

It is very rare that at a town meeting all of the requirements of the election law, town law, liquor tax law, and other statutes relating to such an election are strictly complied with. These requirements are too numerous and intricate to expect exact compliance with every detail on the part of town officers. If an election could be set aside for every oversight, omission, and mistake of the officers in charge, but few would stand. Unless it be shown that such mistake affected the result or tended to deprive some one of his legal rights, such election should not be disturbed.

The application should be denied.

Application denied.