(June 10, 1913.)

## JOHN W. PICKETT, Respondent, v. BOARD OF COUNTY COMMISSIONERS, Appellant.

[133 Pac. 112.]

RURAL HIGH SCHOOL DISTRICT—ORGANIZATION OF—DUTY OF BOARD OF COUNTY COMMISSIONERS—OF BOARD OF TRUSTEES—ORGANIZATION DE FACTO OR DE JURE.

1. Under the provisions of an act of the legislature for the organization of rural high school districts (1909 Sess. Laws, p. 73), the two jurisdictional requisites for the creation of such districts are, first, filing with the board of county commissioners the requisite petition, and second, the submission of the question to a vote of the electors, and if a majority of the votes cast at such election are in favor of creating the district, the district is thereby created.

2. That act of the legislature vested the power in the electors to determine whether or not a rural high school district should be organized.

3. The rights of electors should not be prejudiced by the errors or wrongful acts of the election officers, unless it be made to appear that a fair election was prevented by reason of such irregularities.

4. The duties of such boards under that act are ministerial.

5. After a rural high school district has exercised the functions of such district for a period of nearly two years, its legal organization will be presumed, whatever may have been the defects and irregularities in the formation or organization of such district.

6. Under the facts of this case, *held*, that said rural high school district existed as a corporation *de facto*, if not *de jure*.

7. *Held*, that the order appealed from was not necessary to the organization of said district, and that the valid organization of said district could not be inquired into or attacked on an appeal from said order.

APPEAL from the District Court of the Ninth Judicial District, in and for Fremont County. Hon. James G. Gwinn, Judge.

An appeal from the judgment of the district court reversing an order of the board of county commissioners and holding

that Rural High School District No. 3, in Fremont county, has no existence *de facto* or *de jure*.   Judgment *reversed.*

Richards & Haga and Soule & Soule, for Appellant.

The steps prescribed by the statute after the district has been actually created are merely directory and not vital to the creation of such district, if not done in strict accordance with the terms of the statute, because the act does not declare them essential to the validity of the existence of such district. (*Murphy v. City of Spokane,* 64 Wash. 681, 117 Pac. 476; *Seymour v. City of Tacoma,* 6 Wash. 427, 33 Pac. 1059.)

The right of the voters should not be prejudiced by the errors or wrongful acts of the election officers, unless it be made to appear that a fair election was prevented by reason of the alleged electors.   (*Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580; *Wardner v. Pelkes,* 8 Ida. 333, 69 Pac. 64; *People v. Pike,* 197 Ill. 449, 64 N. E. 393; *State v. Town of West Port,* 116 Mo. 582, 22 S. W. 888.)

The failure of officers to perform acts directory in their nature cannot nullify the will of electors expressed by their votes at an election.   (*People v. Van Cleve,* 1 Mich. 362, 53 Am. Dec. 69; *State v. Burkholder,* 42 Kan. 641, 22 Pac. 722; *Crabb v. Celeste Ind. School Dist.* (Tex. Civ. App.), 132 S. W. 890; 15 Cyc. 378, 383, 387.)

"After a school district has exercised the franchises and privileges thereof for a period of one year, its legal organization will be conclusively presumed, whatever may have been the defects and irregularities in the formation or organization of such district." (*State v. School Dist.,* 42 Neb. 499, 60 N. W. 912; *Jameson v. People,* 16 Ill. 257, 63 Am. Dec. 304; *Bank of U. S. v. Dandridge,* 12 Wheat. 64, 6 L. ed. 552; *State v. Huff,* 105 Mo. App. 354, 79 S. W. 1010; *Greenfield School Dist. v. Hannaford Special School Dist.,* 20·N. D. 393, 127 N. W. 501; *People v. Maynard,* 15 Mich. 463; *Kockrow v. Whisenand,* 88 Neb. 640, 130 N. W. 287.)

It seems clear that if this district did'not exist as a *de jure* corporation, it did exist as a *de facto* corporation.   (*School*

*Dist. v. Rice,* 11 Ida. 99, 81 Pac. 155; *Splonskofsky v. Minto,* 62 Or. 560, 126 Pac. 15; *Gilkey v. Town of How,* 105 Wis. 41, 81 N. W. 120, 49 L. R. A. 483.)

"A corporation *de facto* may legally do and perform every act and thing which the same entity could do or perform were it a *de jure* corporation." (*People v. La Rue,* 67 Cal. 526, 8 Pac. 84; *Miller v. Perris Irr. Dist.,* 85 Fed. 693.)

This rule is necessary not only to protect the good name of the state and the corporation, but also third parties, such as the purchaser of these bonds. (*Speer v. Board of County Commissioners,* 88 Fed. 749, 32 C. C. A. 101; *Tulare Irr. Dist. v. Sheppard,* 185 U. S. 1, 22 Sup. Ct. 531, 46 L. ed. 773, 780.)

The board of county commissioners had no jurisdiction over the existence or nonexistence of this district, and therefore had no power to make any order that in any wise affected the existence of this district; and therefore the trial court acquired no jurisdiction greater than such board possessed, other than such jurisdiction as was necessary to declare such order void. (*School Dist. No. 25 v. Rice,* 11 Ida. 99, 81 Pac. 155; *Millisor v. Wagner,* 133 Ind. 400, 32 N. E. 927; *Myers v. Gibson,* 152 Ind. 500, 53 N. E. 646; *David v. Hardin County etc.,* 104 Iowa, 204, 73 N. W. 576.)

An estoppel by laches or acquiescence may be invoked against an attack upon the validity of the formation or organization of a public or public *quasi* corporation. (*McDonald v. Parker,* 130 Ky. 501, 110 S. W. 810; *State ex rel. School Dist. v. Miller,* 113 Mo. App. 665, 88 S. W. 637; *McNutt v. Lemhi Co.,* 12 Ida. 77, 84 Pac. 1054; *State v. Huff,* 105 Mo. App. 354, 79 S. W. 1010.)

Under no statutory provision or principle of law could respondent directly or indirectly by any suit or proceeding assail the validity of the establishment and existence of Rural High School Dist. No. 3. (1 McQuillan, Mun. Corp., secs. 158, 159; 4 Dillon, Mun. Corp., 5th ed., sec. 1560; *State v. Ryan* (Utah), 125 Pac. 666.)

George H. Lowe and N. D. Jackson, for Respondent.

The appeal from the order of the board of county commissioners brought the matter of organization of the district before the district court for trial *de novo*. It was a direct attack upon the legality of the organization, and raised the question of whether or not Rural High School District No. 3 had a *de jure* existence. Such proceedings differ from one where it is sought to collaterally attack the existence of a corporation, in that where the attack is collateral it may be proper for the court to inquire whether the corporation had a *de facto* existence. Under our statute the appeal from the order of the board of county commissioners to the district court put upon the county board the burden of proof to make a *prima facie* case in support of its order, that is, to show the jurisdictional facts. (*Gardner v. Blaine Co.*, 15 Ida. 698, 99 Pac. 826; *Prothero v. Board of Commrs. of Twin Falls Co.*, 22 Ida. 598, 127 Pac. 175; *Moorpark School Dist. v. Reynolds,* 13 Cal. App. 170, 109 Pac. 149.)

"If the board acted without jurisdiction in the promulgation of such order, it was appealable, and subject to review in the district court on that ground, if no other." (*School District v. Rice,* 11 Ida. 107, 81 Pac. 155.)

No appeal from the order calling the election was necessary in order to procure a review of that order in the district court, on appeal from the final order. (*Latah County v. Hasfurther,* 12 Ida. 797, 88 Pac. 433.)

SULLIVAN, J.—This is an appeal concerning an order made by the board of county commissioners of Fremont county, confirming the acts done in creating Rural High School District No. 3 and the acts of the board of trustees of such district, which order of the board was taken on appeal to the district court, and the district court set aside the order of the board of county commissioners and held that said Rural High School District had no existence *de jure* or *de facto.* From that judgment this appeal is taken.

It appears from the record that prior to March 3, 1910, there existed in Fremont county organized school districts Nos. 8, 48, 55, 60, 63, 66 and 74, and on March 3, 1910, a petition was filed with the board of county commissioners, pursuant to an act of the legislature of March 3, 1909 (Sess. Laws, p. 73), praying for the organization of Rural High School District No. 3. At its meeting held on May 23, 1910, the board of commissioners made an order calling an election for the purpose of organizing said high school district. The parties interested having failed to post notices required by said act, the matter was again brought before said board at its meeting on July 12, 1910, and the board made an order calling an election for the 23d of July, 1910. Said election was held on that date, the vote canvassed, and a board of trustees of said district was organized on August 1, 1910, which board certified to the clerk of the board of county commissioners the result of the election. One of the respondents here was one of said trustees.

Said high school district has conducted school, issued warrants in the usual way, which have been paid by the county treasurer, bonds of the district were issued and sold in the sum of $20,000 for the erection of a schoolhouse, the warrants of such district for the expense of running such school for about two years were issued and paid, taxes were levied and collected and the proceeds of such bonds were paid to the district for the purpose of building a schoolhouse. On July 5, 1912, it was discovered that the return showing the votes cast at said election had been duly canvassed and required to be sent to the board could not be found on file with the clerk of the board of county commissioners. Thereupon two affidavits were filed in the office of the clerk of said board, showing that fifty-nine votes were cast for the organization of said district at said election and no votes were cast against it. On July 8, 1912, the matter came before the board and the board made the order from which this appeal is taken, and under date of July 23, 1912, the clerk of said board filed two certificates and mailed a copy thereof to the clerk of said rural high school district. On July 26, 1912, respondent filed

with the clerk of said board a notice of appeal from said order on behalf of himself and others.

Said appeal came on to be heard before the district court, when a motion was made by the board of county commissioners to make such notice of appeal more definite and certain and to strike out a certain portion of the same. A demurrer was also filed. The court sustained the motion to strike out a portion of said notice of appeal and overruled the motion to make more definite and certain parts thereof, and also overruled the demurrer of appellant. After trial a judgment as above stated was entered.

It is first contended by counsel for appellant that said Rural High School District No. 3 was a legally organized and existing high school district prior to the making of said order of the board of county commissioners from which this appeal was taken. This contention is based on the ground that under the provisions of said act of the legislature above referred to, the required petition for the organization of said district had been presented to the board and the board had made the required order calling an election to be held to determine whether such district should be organized, which election resulted in a unanimous vote in favor of the district, and that the board of trustees of such district organized on August 1, 1910, and that the district has continued to exist and to exercise the powers and privileges of a high school district since that time, and for those and other reasons the court erred in holding that said district had no existence *de jure* or *de facto.*

Sec. 1 of said act provides that when the heads of five or more families in each of two or more regularly organized school districts, not having within their limits an incorporated city, shall petition the board of county commissioners of their county to unite them in a rural high school district for the purpose of maintaining a high school therein, said board shall submit the question to a vote of the qualified electors of the district so petitioning at a special election called for that purpose.

Sec. 2 provides that such election shall be held at the most centrally located schoolhouse in the several districts petitioning; also provides the form of ballot of such election.

Sec. 3 provides that if more votes are cast in favor of such rural high school district than against it, the boards of school trustees of the districts included in such rural high school district, if there are but two, and if there are more than two districts so included, then the chairman of each board of trustees, shall within ten days after such election meet and organize as the board of trustees of such rural high school district, by electing one of their number president and electing a clerk or secretary; that such board, when so organized, shall at their first meeting certify to the clerk of the board of county commissioners the result of the election so held, and the clerk of the board of county commissioners shall designate the said district as "Rural High School District No. ——," and so certify it to the clerk or secretary of said rural high school district, and also to the board of county commissioners at their next meeting.

Sec. 4 provides for the time of holding regular meetings of such board of trustees and their powers.

It appears that the two jurisdictional requisites for creating a rural high school district under said act are, first, the filing with the board of county commissioners of the requisite petition; and, second, the submission of the question to a vote of the electors, and if a majority of the votes cast at such election is in favor of creating such district, the district is created. Those jurisdictional requirements having been complied with, the district was brought into existence. That act of the legislature vested the power in the electors to determine whether a rural high school district should be organized or created. To "create" means to cause to exist, to bring into existence. Under the provisions of said act, if more votes were cast in favor of such rural high school district than against it, the chairman of each board of trustees of the several districts included were required to meet and organize a board of trustees of such rural high school district by electing one of their number president and electing a

clerk. This step was not the cause of the existence of the district but was a step resulting from the existence of the district, and the certifying of the result of the election by such board of trustees was required because of the creation of the district, and that part of the act requiring the clerk of the board of commissioners to designate the district by number was something required to be done by an officer after the organization of the district. These several steps were simply directory and not vital to the creation of the district, and if not done in strict accordance with the terms of the statute, that would not invalidate the existence of the district.

In *Murphy v. City of Spokane,* 64 Wash. 681, 117 Pac. 476, the court said:

"The principle underlying all these decisions is that the rights of the voters should not be prejudiced by the errors or wrongful acts of the election officers, unless it be made to appear that a fair election was prevented by reason of the alleged irregularities." (See *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580.)

The failure of an officer to perform acts directory in their nature cannot nullify the will of the electors expressed by their vote at an election.

In *People v. Van Cleve,* 1 Mich. 362, 53 Am. Dec. 69, the court said: "The duties of these boards are simply ministerial."

In *State v. Burkholder,* 42 Kan. 641, 22 Pac. 722, on p. 724, the court said: "And no effort, it would seem, was ever made until this action was commenced to contest the election, or to set it aside, or to have it declared illegal or void, but, on the contrary, it was treated as legal and valid, and the rights of third parties have now intervened. And for all these reasons we think that the election should now be held to be valid." (See, also, *School Directors v. School Directors,* 73 Ill. 249; *Crabb v. Celeste Ind. School Dist.* (Tex. Civ. App.), 132 S. W. 890; 15 Cyc. 378 et seq.)

The record in the case at bar shows that said district was created, and from the time of such creation it has exercised all of the rights and privileges of a rural high school district,

such as levying and collecting taxes, employing teachers, conducting school, paying the expenses thereof in the usual way by drawing warrants on the county treasurer, by authorizing the issuance of bonds and selling the same and receiving the proceeds for the purpose of constructing a high school building. Under the continued user of corporate powers and public acquiescence therein, the law will indulge all presumptions in favor of the legal establishment and existence of a municipal corporation.

In *State v. School Dist. No. 19*, 42 Neb. 499, 60 N. W. 912, the court said:

"After a school district has exercised the franchises and privileges thereof for the period of one year, its legal organization will be conclusively presumed, whatever may have been the defects and irregularities in the formation or organization of such district." (*Kockrow v. Whisenand*, 88 Neb. 640, 130 N. W. 287; *People v. Maynard*, 15 Mich. 463.)

There was no appeal taken from the order of the board of county commissioners entered in July, 1910, ordering an election for the creation of said district, and the district having exercised its corporate functions for nearly two years without objection, before the order appealed from was made, there was really nothing on which the board of county commissioners could act at the time the order was made, so far as the legal organization of said district was concerned. In other words, the validity of the existence of the district could not be affected by any order of the board, and the question as to the legal organization of the district could not be raised on an appeal from said order.

In 10 Cyc., at p. 253, the author states that "a corporation *de facto* exists when there is: (1) A charter or statute under which a corporation with the powers assumed might have been organized. (2) A *bona fide* attempt to organize a corporation under such a charter or statute. (3) An actual user of the corporate powers, or some of them, which might have been rightfully used by such an organization."

Under the facts of this case, a corporation *de facto* certainly existed, if not one *de jure*. There was the actual user

of the corporate powers of a rural high school district for nearly two years, as shown by the facts above stated, and under the authorities above cited, its legal organization will be presumed whatever may have been the defects and irregularities in the formation or organization of the district. The record shows that one of the persons interested in this appeal has been a member of the board of trustees of said Rural High School District No. 3 since its organization, and is or should be fully conversant with all of the acts and things done by said school district, and if one desires to contest the validity of the organization of a municipality, he should proceed to do so within a reasonable time after its organization. One or more of the school districts included in said Rural High School District have withdrawn therefrom and the residents thereof have no interest in this case.

It was not necessary for the complete organization of said district for the board of county commissioners to make the order appealed from in this case, and under the facts of this case, on an appeal from that order the organization of said district could not be attacked.

It is evident from the record that on the trial of the case in the district court, the court proceeded upon the theory that he could determine the validity of the organization of said school district on said appeal; and it also appears that those who appealed from said order of the board of county commissioners prosecuted their appeal for the sole purpose of testing the validity of the organization of said district, and since we have herein held that the question of the organization of said school district could not be attacked on said appeal, the judgment of the district court must be reversed and the cause remanded, with instructions to the district court to dismiss said appeal. Costs are awarded to the appellant.

Ailshie, C. J., and Stewart, J., concur.